Anthony M. Alexis, DC Bar 384545
Enforcement Director
David Rubenstein, DC Bar 458770
Deputy Enforcement Director
Cynthia Gooen Lesser, NY Bar 2578045
Assistant Deputy Enforcement Director
Rina Tucker Harris, DC Bar 444550
Senior Litigation Counsel
rina.harris@cfpb.gov
Mary K. Warren, NY Bar 2557684
Enforcement Attorney
mary.warren@cfpb.gov
Jessica Rank Divine, NY Bar 4544573
Enforcement Attorney
jessica.divine@cfpb.gov
CONSUMER FINANCIAL PROTECTION BUREAU
1700 G Street NW
Washington, DC 20552
Telephone: (202) 435-9196
    Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br>      Plaintiff,<br>      v.<br><br>AEQUITAS CAPITAL MANAGEMENT INC., AEQUITAS MANAGEMENT LLC, AEQUITAS HOLDINGS, LLC, AEQUITAS COMMERCIAL FINANCE, LLC, CAMPUS STUDENT FUNDING, LLC, CSF LEVERAGE I LLC, AEQUITAS INCOME OPPORTUNITY FUND, and AEQUITAS INCOME PROTECTION FUND,<br><br>      Defendants. | Case No. 17-cv-1278 ~ PK<br><br>[PROPOSED] STIPULATED FINAL JUDGMENT AND ORDER |

The Consumer Financial Protection Bureau (Bureau) commenced this civil action on August 17, 2017 to obtain consumer redress, injunctive relief, and other relief, from the Defendants. The Complaint alleges violations of §§ 1031(a) and 1036(a)(1) of the Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5531(a), 5536(a)(1) in connection with Defendants' funding, purchasing, and maintaining loans made to students at Corinthian Colleges, Inc. (Corinthian). Specifically, the Complaint alleges Defendants funded and maintained the private student loan program offered to . Corinthian students as part of a scheme to allow Corinthian to present a façade of compliance with federal laws requiring that a certain portion of a for-profit school's revenue come from sources other than federal student aid. The Complaint also alleges that Defendants profited from this scheme, and in doing so, took unreasonable advantage of Corinthian's student borrowers who were unaware of the scheme associated with this loan program, and therefore were unable to protect their interests in taking out such loans.

The Securities and Exchange Commission commenced the Receivership Action in this Court on March 10, 2016 to, among other things, obtain injunctive relief against Defendants for violation of certain federal securities laws, and place Defendants and certain other related parties in receivership for purposes of orderly liquidation. The Court entered a preliminary injunction against Defendants on March 14, 2016, and by Order dated April 14, 2016 (Receivership Order) appointed the Receiver for Defendants and certain other related parties. Pursuant to the Receivership Order, the Receiver has the power and authority to enter into this Stipulated Final Judgment and Order (Order) and to perform certain duties set forth in this Order during the pendency of the Receivership.

The parties, by and through respective counsel, have requested the Court to enter this Order to resolve all matters in dispute arising from the conduct alleged in the Complaint.

## I. FINDINGS

1. This Court has jurisdiction over the parties and the subject matter of this action.

2. The parties agree to entry of this Order to settle and resolve all matters in dispute arising from the conduct of Defendants alleged in the Complaint.

3. The Bureau makes no allegations against the Receiver, but only against Defendants. The Receiver is obligated under this Order for the sole purpose of acting on behalf of the Defendants to grant certain monetary relief from the assets of the Receivership and to perform certain obligations to the Bureau set forth in this Order. Defendants neither admit nor deny any allegation in the Complaint, except that for purposes of this Order, Defendants admit the facts necessary to establish the Court's jurisdiction over Defendants and the subject matter of this action.

4. The loan reductions, discharges and cancellations described in this judgment are based on alleged infirmities that relate back to the original sale of educational services by Corinthian and are for the purpose of correcting these alleged unlawful business practices by the Defendants, including alleged unfair, deceptive, and abusive acts and practices.

5. Defendants waive service under Rule 4(d) of the Federal Rules of Civil Procedure and waive all rights to seek judicial review or otherwise challenge or contest the validity of this Order. Defendants also waive any claims that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the

date of this Order. Each party will bear its own costs and expenses, including, without limitation, attorneys' fees.

6. Entry of this Order is in the public interest.

## II. DEFINITIONS

7. "Affected Consumers" means all consumers who were Borrowers of Aequitas Genesis Loans and have remaining unpaid amounts on such loans as of the Record Date.

8. "Active Aequitas Genesis Loans" means, as of the Record Date, all Aequitas Genesis Loans, with the exception of Defaulted Genesis Loans and Aequitas Closed School Loans.

9. "Defendants" means Aequitas Capital Management Inc., Aequitas Management LLC, Aequitas Holdings LLC, Aequitas Commercial Finance LLC, Campus Student Funding LLC, CSF Leverage I LLC, Aequitas Income Opportunity Fund, and Aequitas Income Protection Fund, as named in the Complaint.

10. "Aequitas Genesis Loan" means any private student loan referred to in the Complaint as either a Genesis loan or EducationPlus loan, which was made to a Borrower to pay for tuition, cost of living expenses and/or fees to attend a Corinthian school, and which as of the Record Date still has an outstanding balance on the books and records of Defendants in the possession of the Receiver (or on the books and records of servicers of said loans).

11. "Borrower" means a consumer who was a borrower of an Aequitas Genesis Loan, and his/her/its successors or assigns.

12. "Closed School Loan " means an Aequitas Genesis Loan to a Borrower who did not graduate or complete his/her course work and who (a) attended one of the

Corinthian schools that Corinthian announced on April 27, 2015 would be closed (listed on Schedule 1 to this Order) and was either attending such school when it closed or withdrew from such school on or after June 1, 2014, or (b) attended one of the Corinthian schools sold to Zenith (listed on Schedule 2 to this Order) and whose loan is included on a list agreed upon between the Receiver and the Bureau prior to the filing of the Complaint.

13. "Defaulted Aequitas Genesis Loan" means an Aequitas Genesis Loan that is 270 days or more past due, charged off, or cancelled as of the Record Date.

14. "Current Payment Amount" is the monthly payment amount designated for each Active Aequitas Genesis Loan in order to keep the account current and non-delinquent.

15. "Effective Date" means the date on which this Order is entered on the docket.

16. "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or his or her delegate.

17. "Re-Amortization Payment Amount" is a new payment amount per month for each Active Aequitas Genesis Loan, calculated based on the principal reduction provided for in paragraph 32 as of the Effective Date such that the Active Aequitas Genesis Loan will be fully paid if the Re-Amortization Payment Amount is paid by the Borrower each month on time, by the end of that loan's actual or, in the case of loans that have ever been in or are currently in a forbearance plan, estimated remaining term.

18. "Receiver" means Ronald Greenspan, receiver of Aequitas, named as such in the Receivership Order, or any other receiver that is appointed by a superseding order in the same litigation.

19. "Receivership Action" means the matter of *SEC v. Aequitas Management, LLC, et al.*, No. 3:16-cv-438(PK) (D. Or.).

20. "Receivership Order" means the Order Appointing Receiver, ECF No. 156, *SEC v. Aequitas Management, LLC, et al.*, No. 3:16-cv-438(PK) (D. Or. Apr. 14, 2016).

21. "Record Date" means March 31, 2017.

22. "Retained Personnel" means the agents of the Receiver, as defined by the Receivership Order.

## III.  ORDER

### A. CONDUCT PROVISIONS

**IT IS HEREBY ORDERED** as follows:

23. Defendants and their respective officers, agents, servants, employees and attorneys, who have actual notice of this Order, whether acting directly or indirectly, may not violate §§ 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531, 5536, including by engaging in abusive acts or practices in connection with lending to students of for-profit schools.

24. Within 30 days of the Effective Date, Defendants, or the Receiver on behalf of Defendants, shall obtain the following reports from servicers currently servicing the Aequitas Genesis Loans, with data as of the Record Date. Upon obtaining such reports, the Defendants or the Receiver on behalf of the Defendants shall provide copies of them to the Bureau. The following reports are to be obtained, to the extent the specified loan-level data are available:

    a.  a report of all Aequitas Genesis Loans including for each such Aequitas Genesis Loan, the amount of principal, interest, fees, and any other amount due and owing as of the Record Date on such Aequitas Genesis Loan, the associated

Borrower's name, a unique identifying number, and most currently available postal address, phone number, and email address.

b. a report of all Active Aequitas Genesis Loans including for each such Active Aequitas Genesis Loan, the amount of principal, interest, fees, and any other amount due and owing as of the Record Date on such Active Aequitas Genesis Loan, the associated Borrower's name, a unique identifying number, and most currently available postal address, phone number, and email address.

c. a report of all Defaulted Aequitas Genesis Loans, including for each such Defaulted Aequitas Genesis Loan, the amount of principal, interest, fees, and any other amount due and owing as of the Record Date on such Defaulted Aequitas Genesis Loan, the associated Borrower's name, a unique identifying number, and most currently available postal address, phone number, and email address.

d. a report of all Closed School Loans, including for each such Closed School Loan, the amount of principal, interest, fees, and any other amount due and owing as of the Record Date on such Closed School Loan, the associated Borrower's name, a unique identifying number, and most currently available postal address, phone number, and email address.

25. For each Closed School Loan, Defendants, and the Receiver on behalf of Defendants, are permanently restrained and enjoined as of the Effective Date from:

a. Engaging in any collection activity with respect to each such Closed School Loan; however, Defendants will not be regarded as in violation of this Order if they send out routine statements or notices that could be considered collection activity within 20 days after the Effective Date;

b. Accepting any future payment on any such Closed School Loan, including any future payment made in connection with any statement or notice permitted by subparagraph (a), provided, however, that in the event that such a payment is discovered to be accepted and processed, Defendants, or the Receiver acting on Defendants' behalf, will return the payment to the Borrower within a reasonable time; and

c. Reselling, transferring, or assigning any such Closed School Loan.

26. For each Defaulted Aequitas Genesis Loan, Defendants, and the Receiver on behalf of Defendants, are permanently restrained and enjoined as of the Effective Date from:

a. Engaging in any collection activity with respect to each such Defaulted Aequitas Genesis Loan; however, Defendants will not be regarded as in violation of this Order if they send out routine statements or notices that could be considered collection activity within 20 days after the Effective Date;

b. Accepting any future payment on any such Defaulted Aequitas Genesis Loan, including any future payment made in connection with any statement or notice permitted by subparagraph (a), provided, however, that in the event that such a payment is discovered to be accepted and processed, Defendants, or the Receiver acting on Defendants' behalf, will return the payment to the Borrower within a reasonable time; and

c. Reselling, transferring, or assigning any such Defaulted Aequitas Genesis Loan.

27. For each Active Aequitas Genesis Loan, Defendants, and the Receiver on behalf of Defendants, are permanently restrained and enjoined as of the Effective Date from:

a. Reselling, transferring, or assigning any such Active Aequitas Genesis Loan, unless:

    i.    Defendants, or the Receiver on behalf of Defendants, ensure that the principal amount of each such loan sold, transferred or assigned reflects the reduction required in paragraph 32;

    ii.    Within five business days of reaching an agreement in principle to sell, transfer or assign any Active Aequitas Genesis Loans, in which the terms have been agreed upon by the parties but the Receiver has not yet sought the authority of the Receivership Court to make such a sale, transfer, or assignment, Defendants, or the Receiver on behalf of Defendants, must provide the Bureau:

        1.  notice of the fact that such agreement in principle has been reached;

        2.  the name of the proposed purchaser, transferee or assignee;

        3.  the list of Active Aequitas Genesis loans to be sold, transferred or assigned; and

        4.  the proposed written agreement memorializing the terms of the proposed sale, transfer, or assignment;

    iii.    Within five business days prior to filing a motion seeking court approval for any such sale, transfer or assignment of Active Aequitas Genesis Loans, Defendants, or the Receiver on behalf of Defendants, must provide the Bureau:

        1.  notice of its intention to file any such motion; and

2. the proposed motion papers, including any attachments thereto;

    iv.    Defendants, or the Receiver on behalf of Defendants, ensure that the final agreement memorializing any such sale, transfer or assignment of any Active Aequitas Genesis Loans contains a provision requiring the purchaser, transferee or assignee to adopt or abide by the terms and provisions of this Order requiring ongoing performance for the Bureau;

b. Any motion seeking approval for any such sale, transfer or assignment of Active Aequitas Genesis Loans shall (1) contain a request to the Court that the terms of this Order requiring ongoing performance for the Bureau shall be enforceable against the purchaser, transferee or assignee; and (2) not seek to sell, transfer or assign such loans free and clear of rights, claims or defenses of any borrower, co-borrower or guarantor on any such Loan.

28. For each Active Aequitas Genesis Loan, Defendants, and the Receiver on behalf of Defendants, are permanently restrained and enjoined as of 60 days after the Effective Date from:

a. Engaging in any collection activity with respect to each such Active Aequitas Genesis Loan that seeks an amount in principal greater than the amount identified in paragraph 32, including by:

    i.    calculating interest or fees based on a principal amount greater than the amount identified in paragraph 32, however, in the event interest or fees have been calculated on a principal amount greater than the amount identified in paragraph 32, the excess amounts that have been paid by the Borrower will be applied to the Borrower's principal balance

unless the Borrower seeks a refund of such improperly charged amounts, in which case the Borrower will be supplied a refund; and

ii.     representing to the Borrower of any such Active Aequitas Genesis Loan that the principal amount owed is greater than the amount identified in paragraph 32.

29. Within 30 days of the Effective Date, Defendants, or the Receiver on behalf of Defendants, must request that  and use commercially reasonable efforts to follow up with any servicer that furnished trade line information for Aequitas Genesis Loans to credit reporting agencies to furnish deletion codes to said credit reporting agencies to delete such information from subject Borrowers' credit reports. For Borrowers of Active Aequitas Genesis Loans who perform under such Loans after the Effective Date, Defendants, or the Receiver on behalf of Defendants, may direct the servicer to report such performance to credit reporting agencies in accordance with applicable law. For any Borrowers who become or continue to be delinquent or in default after the Effective Date,  Defendants, or the Receiver on behalf of Defendants, may direct the servicer to report such Borrowers' status to credit reporting agencies in accordance with applicable law; however, any such reporting shall reflect the balance as modified by this Order.

30. Defendants, or the Receiver on behalf of Defendants, shall direct any person or entity collecting on Active Aequitas Genesis Loans to fully comply with all applicable requirements of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, in any such collection.

## B. REDRESS AND REMEDIATION

**IT IS FURTHER ORDERED** that:

31. Within 60 days after the Effective Date, Defendants, or the Receiver on behalf of Defendants, will discharge and cancel all amounts shown as owed in the report provided to the Bureau under paragraph 24, including principal, interest, fees or any other amounts, in connection with:

      a. all Closed School Loans; and

      b. all Defaulted Aequitas Genesis Loans.

32. Within 60 days after the Effective Date, Defendants, or the Receiver on behalf of Defendants, shall reduce the principal amount owed as of the Record Date on each Active Aequitas Genesis Loan, as identified in the report provided to the Bureau under paragraph 24, by 55% and discharge and cancel such principal and any accrued and unpaid interest, fees and charges that are 30 or more days past due as of the Record Date.

33. Defendants, or the Receiver on behalf of Defendants, shall use commercially reasonable efforts to obtain guidance from the Internal Revenue Service indicating that the Receiver is not required to make federal tax filings (including sending 1099 forms to Borrowers) as a result of the debt relief provided in this Order, prior to the time such forms would be required to be sent. If the Receiver, in consultation with his counsel, is satisfied that such guidance is reliable, the Receiver shall not make applicable federal tax filings and shall not send Borrowers 1099 forms.

34. Defendants, or the Receiver on behalf of Defendants, must provide each Borrower of a Closed School Loan and each Borrower of a Defaulted Aequitas Genesis Loan with the following notice within 90 days of the Effective Date. Nothing else but

such notice shall be sent in combination with the mailing of this notice and such mailing will be sent to the most recently available postal address as contained on the servicer's system of record. The notice shall contain the following information:

a. The outstanding amount that had been owed under each Aequitas Genesis Loan as of the Record Date by such Borrower;

b. The fact that each such amount has been reduced, discharged and canceled in full and such Borrower no longer owes any amounts under his or her Aequitas Genesis Loan;

c. The fact that the cancellation of the amounts owed for each such Aequitas Genesis Loan is pursuant to this Order;

d. The fact that the Borrower will not be subjected to any new debt-collection or credit-reporting activities related to each such Aequitas Genesis Loan;

e. Any such reduction, discharge or cancellation of principal may result in tax liabilities of the borrower to the Internal Revenue Service and state taxing authorities;

f. No amounts that were due and owing and were paid prior to the Record Date will be returned to the Borrower.

35. Within 90 days of the Effective Date, Defendants, or the Receiver on behalf of Defendants, must provide each Borrower of an Active Aequitas Genesis Loan written notice as described in paragraph 37 of his/her option to either continue paying the Current Payment Amount on the lowered principal balance or elect to have the loan re-amortized using the lowered principal balance and remaining term of the subject loan, which will result in a Re-Amortization Payment Amount. No such notice is required to a Borrower and no Re-Amortization Payment Amount will be available to a Borrower,

however, if such Borrower's Current Payment Amount before re-amortization is less than $20; in any event, a Borrower's Re-Amortization Payment Amount will not be less than $20.

36. Each Borrower of an Active Aequitas Genesis Loan will have 90 days from the mailing date of such notice to make his/her election by completing the notice and returning it to Defendants, the Receiver (on behalf of Defendants) or the applicable servicer. If the Borrower does not make such an election, he or she will be required to pay the Current Payment Amount and the loan will not be re-amortized. For Borrowers as to whom Defendants, the Receiver on behalf of Defendants or the applicable servicer timely have received affirmative notice of election of the Re-Amortization Payment Amount, within 30 days following the expiration of the 90 day election period, Defendants, or the Receiver on behalf of Defendants, will re-amortize loans and adjust the monthly payment amount for all future unbilled and un-accrued loan payments to the Re-Amortization Payment Amount. Notwithstanding the foregoing, for any Active Aequitas Genesis Loan which already has been amended or modified pursuant to a forbearance plan to provide a Borrower with a monthly payment that is less than the applicable Re-Amortization Payment Amount and the Borrower has elected to accept the re-amortization option, Defendants, or the Receiver on behalf of Defendants, shall not be required to adjust the monthly payment until the end of the applicable forbearance period. Defendants, or the Receiver on behalf of Defendants, will adjust the monthly payment to a Re-Amortization Payment Amount based on the principal balance of the Borrower's loan at the end of the applicable forbearance period.

37. Defendants, or the Receiver on behalf of Defendants, must provide each Borrower of an Active Aequitas Genesis Loan with the following notice pursuant to

paragraph 35. Nothing else but such notice shall be sent in combination with the mailing of this notice and such mailing will be sent to the most recently available postal address as contained on the servicer's system of record. The notice shall contain the following information:

a. Identification information that associates the loan to the Borrower;

b. The amount of principal owed as of the Record Date of each Active Aequitas Genesis Loan associated with such Borrower;

c. The amount of principal owed for each such Active Aequitas Genesis Loan after the reduction required in paragraph 32 has been applied;

d. A statement notifying the Borrower that the principal has been reduced by 55% pursuant to this Order;

e. A Re-Amortization Payment Amount option whereby the Borrower has 90 days from the mailing date of such notice to inform the servicer of his or her election to opt-in and have his or her loan re-amortized with the minimum monthly payment modified from the Current Payment Amount to a Re-Amortization Payment Amount;

f. The fact that if the Borrower does not make such an election by the required date, the Current Payment Amount will continue as the amount due on his or her loan each month;

g. The fact that replacing the Current Payment Amount with the Re-Amortization Payment Amount may reduce the amount such Borrower pays each month but will cost the Borrower more over the life of the loan than if he or she continued with the Current Payment Amount;

h. The fact that a Borrower's election will not waive any rights, claims or defenses that the Borrower and any co-borrower or guarantor may have with respect to the loan.

i. The fact that continuing to pay the Current Payment Amount (or more) each month will result in full satisfaction of his or her loan before the payment term has expired, and will cost the Borrower less overall than if he or she elected to use the Re-amortization Payment Amount;

j. The following specific information individualized for each Borrower on an Active Aequitas Genesis Loan:

    i. The estimated total amount of principal and interest the Borrower will pay if the Borrower pays each current Payment Amount as scheduled, as well as the estimated date of pay-off of the Active Aequitas Genesis Loan under these circumstances;

    ii. The estimated total amount of principal and interest that the Borrower will pay if the Borrower elects his or her option to pay the Re-Amortization Payment Amount and pays such Re-Amortization Payment Amount as scheduled, as well as the estimated date of pay-off of the Active Aequitas Genesis Loan under these circumstances;

k. Any reduction, discharge or cancellation of principal may result in tax liabilities of the borrower to the Internal Revenue Service and state taxing authorities;

l. A statement notifying the Borrower that, if the Borrower desires, the Borrower at any time may make payments larger than the Re-Amortization

Payment Amount, which if the loan is current would result in a shorter payoff period and interest savings; and

m. A statement notifying Borrowers on forbearance plans of their alternative payment options as set forth in paragraph 36.

n. A statement notifying Borrowers that the relief described does not waive or extinguish any rights, claims or defenses that the Borrower, any co-borrower and/or guarantor may have with respect to his or her loan.

38. A proposed form of the notices required by paragraph 34 and 35 shall be provided to the Enforcement Director for his non-objection within 30 days of the Effective Date.

39. Defendants, or the Receiver on behalf of Defendants, shall include no materials other than the notices provided in paragraphs 34 and 35 in any envelope containing such notices, unless Defendants, or the Receiver on behalf of Defendants, have obtained written confirmation from the Enforcement Director that the Bureau does not object to the inclusion of such materials.

## C. REPORTING REQUIREMENTS

**IT IS FURTHER ORDERED** that:

40. Defendants, or during the pendency of the Receivership Receiver on behalf of Defendants, shall notify the Bureau of any development that may affect their obligations arising under this Order, including, but not limited to, the replacement of the Receiver or the filing of any bankruptcy or insolvency proceeding by or against Defendants. Defendants, or the Receiver on behalf of Defendants, must provide this notice at least 30 days before the development or as soon as practicable after learning about the development, whichever is sooner.

41. Within 180 days of the Effective Date, and again one year after the Effective Date, Defendants, or the Receiver on behalf of Defendants, must submit to the Enforcement Director an accurate written compliance progress report, which, at a minimum:

a. Describes in detail the manner and form in which Defendants, or the Receiver on behalf of Defendants, as applicable, have complied with this Order; and

b. Attaches a copy of each Order Acknowledgment obtained under Section D, unless previously submitted to the Bureau.

42. Defendants, or the Receiver on behalf of Defendants, in carrying out the provisions of this Order, are permitted to make such adjustments to loan balance amounts, accrual of interest and Borrower payment amounts and process refunds to Borrowers (including providing Borrower refunds or reimbursements not expressly required by this Order) as may be necessary to assure compliance with this Order, but in any event in a manner that is fair and transparent to Borrowers subject to such adjustments and in a manner that is otherwise in compliance with this Order.

## D. ORDER DISTRIBUTION AND ACKNOWLEDGEMENT

**IT IS FURTHER ORDERED** that:

43. Within 15 days of the Effective Date, Defendants, or the Receiver on behalf of Defendants, must deliver a copy of this Order to each employee or agent of the Receiver who or which is, as of the Effective Date, employed or retained by the Receiver and who or which has responsibilities that extend beyond the Effective Date related to the subject matter of this Order.

44. Within 30 days of the Effective Date, the Receiver shall provide a signed and dated statement to the Bureau of the Receiver's compliance with paragraph 43, and shall provide a signed and dated statement from the servicer, or any other third-party service provider tasked with carrying out responsibilities under this Order, acknowledging receipt of this Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. §§ 7001 et. seq..

## E. RECORDKEEPING

**IT IS FURTHER ORDERED** that:

45. Defendants, or the Receiver on behalf of Defendants, must maintain for 3 years from the Effective Date or the duration of the Receivership, whichever is lesser, all documents and records necessary to demonstrate full compliance with this Order, including all submissions to the Bureau.

46. Aequitas, or the Receiver on Aequitas's behalf, must make the documents identified in paragraph 45 available to the Bureau upon the Bureau's request.

## F. NOTICES

**IT IS FURTHER ORDERED** that:

47. Unless otherwise directed in writing by the Bureau, Defendants, or the Receiver on behalf of Defendants, must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line *CFPB v. Aequitas Management, LLC*, 17-cv-1278 (D. Or.) and send them either

    a. By overnight courier (not the U.S. Postal Service), as follows:

       Assistant Deputy Enforcement Director

       Consumer Financial Protection Bureau

ATTENTION: Office of Enforcement

1700 G Street NW

Washington, DC 20552; or

   b.  By first-class mail to the below address and contemporaneously by email

to Enforcement_Compliance@cfpb.gov:

ATTENTION: Office of Enforcement

Assistant Deputy Enforcement Director

ATTENTION: Office of Enforcement

1700 G Street NW

Washington, DC 20552

## G. COOPERATION WITH THE BUREAU

**IT IS FURTHER ORDERED** that:

48. Defendants, or during the pendency of the Receivership the Receiver on behalf of Defendants, will cooperate fully with the Bureau as necessary to achieve the goals and carry out the requirements of this Order.

49. Defendants, or during the pendency of the Receivership the Receiver on behalf of Defendants, will cooperate fully to help the Bureau determine the identity and the location of, and the relief provided pursuant to this Order for each Affected Consumer, from the information within Defendants' or the Receiver's possession and control or a servicer's system of record.

## H. MODIFICATIONS TO NON-MATERIAL REQUIREMENTS

**IT IS FURTHER ORDERED** that:

50. Notwithstanding the provisions of paragraph 53 (section K), any time limits for performance fixed by this Order may be extended by mutual written agreement of the

parties (or, as applicable, the Receiver) and without further Court approval. Additionally, details related to the administration of Sections C through G of this Order may be modified by written agreement of the parties (or, as applicable, the Receiver) and without further Court approval. Any other modifications to this Order may be made only upon approval of the Court, upon motion by any party.

## I. RELEASE

**IT IS FURTHER ORDERED** that:

51. The Bureau releases and discharges Defendants from all potential liability for law violations that the Bureau has or might have asserted based on the practices described in the Complaint, to the extent such practices occurred before the Effective Date and the Bureau knows about them as of the Effective Date. The Bureau may use the practices described in this Order in future enforcement actions against Defendants, including, without limitation, to establish a pattern or practice of violations or the continuation of a pattern or practice of violations or to calculate the amount of any penalty. This release does not preclude or affect any right of the Bureau to determine and ensure compliance with the Order, or to seek penalties for any violations of the Order.

## J. LIMITATION OF LIABILITY UNDER RECEIVERSHIP ORDER

**IT IS FURTHER ORDERED** that:

52. Notwithstanding any other terms, conditions or provisions of this Order, pursuant to the Receivership Order, the Receiver and the Retained Personnel are entitled to rely on all outstanding rules of law and the orders of the Receivership Court and shall not be liable to any person or party (including, without limitation, the Bureau)

for their own good faith compliance with this Order. Pursuant to the Receivership Order, in no event shall the Receiver or Retained Personnel be liable to any person or party (including, without limitation, the Bureau) for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel, nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by the Receivership Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

## K. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that:

53. This Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED.**

Dated this __1__ day of __Sept__, 2017.

_Marco Hernandez_
United States District Judge

# Schedule 1

## Corinthian Closed School OPEID List (Per the Department of Education Listing)

| OPEID | School Name | Street Address | City | State | Corinthian School # |
|---|---|---|---|---|---|
| 809600 | Everest College | 2215 Mission Road | Alhambra | CA | 340 |
| 1110700 | Everest College | 511 North Brookhurst Street | Anaheim | CA | 171 |
| 1112200 | Everest College | 1045 Ven Redondo Beach Blvd | Gardena | CA | 186 |
| 3072300 | Everest College | 1465 S Addison Ave | Ontario | CA | 245 |
| 404400 | Everest College | 217 E. Club Center Drive, Ste A | San Bernardino | CA | 182 |
| 404400 | Everest College - Santa Ana | 500 West Santa Ana Boulevard | Santa Ana | CA | 172 |
| 404400 | Everest College - Ontario | 1819 South Excise Avenue | Ontario | CA | 564 |
| 481100 | Everest Institute | 1630 Portland Avenue | Rochester | NY | 692 |
| 1110500 | Everest College | 18000 Sherman Way | Reseda | CA | 173 |
| 2295600 | Everest College | 2250 Main Street | Phoenix | AZ | 575, 575 |
| 2295600 | Everest College | 5416 East Baseline | Mesa | AZ | 576 |
| 3195400 | Everest College | 1231 Cabrillo Avenue | Torrance | CA | 155 |
| 723400 | Heald College | 875 Howard Street | San Francisco | CA | 11101 |
| 723401 | Heald College - Honolulu | 1500 Kapiolani Boulevard | Honolulu | HI | 11136 |
| 723402 | Heald College | 6035 Northeast 78th Court | Portland | OR | 11138 |
| 723403 | Heald College - Kaneohe MCB | 840g 220, SE 36. Marine Corps | Kaneohe | HI | Unable to Identify |
| 723403 | Heald College - Concord | 5120 Clayton Road | Concord | CA | 11103, 11109 |
| 723405 | Heald College - Milpitas | 341 Great Mall Parkway | Milpitas | CA | 11105 |
| 723406 | Heald College - Hayward | 25500 Industrial Boulevard | Hayward | CA | 11104 |
| 723407 | Heald College - Modesto | 5260 Pirrone Court | Salida | CA | 11115 |
| 723408 | Heald College - Roseville | Seaside Oaks Plaza | Roseville | CA | 11106 |
| 723409 | Heald College - Salinas | 1450 North Main Street | Salinas | CA | 11108 |
| 723410 | Heald College - Stockton | 1605 East March Lane | Stockton | CA | 11109 |
| 723411 | Heald College - Rancho Cordova | 2910 Prospect Park Drive | Rancho Cordova | CA | 11114 |
| 723412 | Heald College - Fresno | 255 West Bullard | Fresno | CA | 11111 |
| 723413 | Heald College - Fresno Satellite | 255 East River Park Circle | Fresno | CA | 11112 |
| 1287300 | WyoTech | 200 Whitney Place | Fremont | CA | 422 |
| 1287301 | WyoTech | 2161 Technology Place | Long Beach | CA | 274 |
| 1287302 | WyoTech | 3000 S Robertson BLVD #300 | Los Angeles | CA | Unable to Identify |
| 1287302 | WyoTech | 12801 Crossroads Pkwy South | City of Industry | CA | Unable to Identify |

# Schedule 2

## Zenith Closed School OPEID List

| OPEID | SCHOOL NAME | LOCATION | ADDRESS | CITY | STATE | Corinthian "Zenith" School # |
|---|---|---|---|---|---|---|
| 2604800 | EVEREST INSTITUTE | EVEREST INSTITUTE - KALAMAZOO | 5177 WEST MAIN STREET | KALAMAZOO | MI | 347 |
| 982809 | EVEREST INSTITUTE | EVEREST INSTITUTE - CHELSEA | 70 EVERETT AVENUE | CHELSEA | MA | 315 |
| 2300105 | EVEREST COLLEGE | EVEREST COLLEGE - EARTH CITY | 3420 RIDER TRAIL SOUTH | EARTH CITY | MO | 377 |
| 2619630 | EVEREST COLLEGE | EVEREST COLLEGE - BENSALEM | 3010 STATE ROAD | BENSALEM | PA | Unable to Identify |
| 2100402 | EVEREST INSTITUTE | EVEREST INSTITUTE - MERRILLVILLE | 8585 BROADWAY SUITE 200 | MERRILLVILLE | IN | 349 |
| 2100400 | EVEREST INSTITUTE | EVEREST INSTITUTE | 1700 WOODWORTH STREET NORTHEAST | GRAND RAPIDS | MI | 345 |
| 1136600 | EVEREST INSTITUTE | EVEREST INSTITUTE - FORT WORTH | 5237 NORTH RIVERSIDE DRIVE SUITE 200 | FORT WORTH | TX | 613 |
| 149911 | EVEREST UNIVERSITY | EVEREST UNIVERSITY - EVEREST COLLEGE - MERRIONETTE PARK | 11560 SOUTH REDDIE AVENUE | MERRIONETTE PARK | IL | 572 |
| 2298500 | EVEREST COLLEGE | EVEREST COLLEGE | 3280 WEST 3500 SOUTH | SALT LAKE CITY | UT | 572 |
| 450203 | EVEREST COLLEGE | EVEREST INSTITUTE - MCLEAN | 8620 WESTWOOD CENTER DRIVE | VIENNA | VA | 626 |
| 1185800 | EVEREST COLLEGE | EVEREST COLLEGE - BURR RIDGE | 6000 VILLAGE PARK ROAD SUITE 400 | BURR RIDGE | IL | 341 |
| 1185800 | EVEREST COLLEGE | EVEREST COLLEGE | 9811 WOODS DRIVE SUITE 200 | SKOKIE | IL | 341 |
| 1185003 | EVEREST COLLEGE | EVEREST COLLEGE - MELROSE PARK | 1101 WEST NORTH AVENUE SUITE 1 | MELROSE PARK | IL | Unable to Identify |
| 2583002 | EVEREST COLLEGE | EVEREST COLLEGE - BEDFORD PARK | 7439 SOUTH CICERO AVENUE | BEDFORD PARK | IL | 341 |
| 709100 | EVEREST INSTITUTE | EVEREST INSTITUTE - EVEREST COLLEGE - BEDFORD PARK | 100 FORBES AVENUE KOSSMAN BUILDING SUITE 1200 | PITTSBURGH | PA | 656 |
| 450701 | EVEREST COLLEGE | EVEREST COLLEGE - AURORA | 14280 EAST JEWELL AVENUE SUITE 100 | AURORA | CO | 509 |
| 982809 | EVEREST INSTITUTE | EVEREST COLLEGE - JONESBORO | 6431 TARA BOULEVARD | JONESBORO | GA | 363 |
| 2606200 | EVEREST COLLEGE | EVEREST COLLEGE | 981 POWELL AVENUE SW SUITE 200 | RENTON | WA | 316 |
| 982801 | EVEREST INSTITUTE | EVEREST INSTITUTE - DEARBORN | 23400 MICHIGAN AVENUE SUITE 200 | DEARBORN | MI | 337 |
| 507901 | EVEREST COLLEGE | EVEREST COLLEGE | STONEMILL CENTER SUITE 130 120 NORTHEAST 136TH AVENUE | VANCOUVER | WA | 548 |
| 907001 | EVEREST COLLEGE | EVEREST COLLEGE | 600 SW 39TH AVENUE SUITE 100 | PORTLAND | OR | 547 |
| 2617500 | EVEREST COLLEGE | EVEREST COLLEGE | NORTHGATE MERIDIAN BUILDING 2111 NORTH NORTHGATE WAY SUITE 300 | SEATTLE | WA | 390 |
| 2300106 | EVEREST UNIVERSITY | EVEREST UNIVERSITY | 155 WASHINGTON AVENUE SUITE 200 | BREMERTON | WA | 397 |
| 149900 | EVEREST UNIVERSITY | EVEREST UNIVERSITY - LAKELAND | 995 EAST MEMORIAL BOULEVARD | LAKELAND | FL | 766 |
| 149912 | EVEREST UNIVERSITY | EVEREST UNIVERSITY - EVEREST COLLEGE - KANSAS CITY | 1740 WEST 92ND STREET | KANSAS CITY | MO | 320 |